UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EBONY WILLIAMS,<br><br>         Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>         Defendant. | CASE NO. 12-cv-5017-RBL-JRC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: November 30, 2012 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 12, 15, 16).

The ALJ failed to evaluate properly plaintiff's alleged mental impairments. She also failed to provide a germane reason to discount lay opinion evidence. For these

reasons, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Administration for further consideration.

## BACKGROUND

Plaintiff, EBONY WILLIAMS, was twenty seven years old on her date of alleged disability onset of June 12, 2008 (Tr. 111, 115). She has an eleventh grade education (*see* Tr. 510). Plaintiff "described herself as having been a slow learner in school and was required to attend special education classes throughout her elementary school education" (*id.*). She reported "that despite repeated attempts, she has been unable to earn her GED" (*id.*). Her work experience primarily consisted of stocking positions, and reported working last "in July of 2008 at Lowe's as a stocker for four days" (*id.*). Plaintiff reported that "she quit her job due to interfering back pain" (*id.*).

## PROCEDURAL HISTORY

In June, 2008, plaintiff filed applications for a period of disability, disability insurance benefits; and supplemental security income (*see* Tr. 12, 111-17). Her applications were denied initially and following reconsideration (*see* Tr. 12, 59-62, 65-69). Her requested hearing was held before Administrative Law Judge Connie J. Haskins ("the ALJ") on March 25, 2010 (Tr. 27-54). On June 15, 2010, the ALJ issued a written decision in which she found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 9-20).

On November 15, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. In January, 2012, plaintiff filed her complaint

in this Court, seeking judicial review of the ALJ's written decision (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on March 20, 2012 (*see* ECF No. 11). In her Opening Brief, plaintiff raises the following issues for review: (1) whether or not the ALJ erred in her evaluation of plaintiff's mental impairments regarding her steps two and three of the sequential disability evaluation process, and when she rejected the opinions of consultative examiner, Ms. Brooke Sjostrom, M.D. ("Ms. Sjostrom"), as affirmed by Dr. Mahlon Dalley, Ph.D. ("Dr. Dalley"); (2) whether or not the ALJ erred in her review of the lay evidence offered by other medical source, Nurse Practitioner Teresa Colley ("Nurse Colley"); and (3) whether or not the ALJ erred in her step two determination with respect to plaintiff's alleged rheumatoid arthritis as a non-severe impairment (*see* ECF No. 12, pp. 1-2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot,

considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings

offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

## DISCUSSION

1. <u>The ALJ erred in her evaluation of plaintiff's mental impairments when she failed to provide specific and legitimate reason to reject the opinions of consultative examiner, Ms. Brooke Sjostrom, MS, LMHC, ("Ms. Sjostrom"), as affirmed by Dr. Mahlon Dalley, Ph.D. ("Dr. Dalley").</u>

   The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the

1 record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,*

2 *supra*, 81 F.3d at 831). The ALJ "may reject the opinion of a non-examining physician by

3 reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240,

4 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996));

5 *Andrews, supra*, 53 F.3d at 1041).

6   Ms. Sjostrom examined plaintiff on August 22, 2008 and conducted a mental

7 status examination as well as many other objective tests of plaintiff's abilities and

8 limitations (Tr. 501-14). Ms. Sjostrom observed that plaintiff presented as "depressed and

9 detached;" demonstrated a flat affect; and "had difficulties maintaining eye contact with

10 the examiner" (Tr. 510). Ms. Sjostrom also observed that plaintiff was exhibiting

11 guarding behavior; slowed speech; and hypomotor retardation, among other observations

12 (Tr. 508). She opined that plaintiff's "motivation throughout the evaluation appeared

13 appropriate and the test results are believed to be a good indication of her current

14 cognitive and psychological functioning" (Tr. 510). Results from objective testing

15 (MMPI-2) suggested the validity of plaintiff's personality profile, which was "consistent

16 with those individuals who exhibit numerous problems and symptoms including

17 depression, anxiety, somatic complaints, insomnia, fatigue, exhaustion, and difficulty in

18 concentration" (*see* Tr. 512).

19   Ms. Sjostrom indicated that plaintiff scored 26 out of 30 on her mini mental status

20 examination, and she also observed that plaintiff recalled two out of three words after a

21 delay; failed to complete the serial 7s subtraction task; and could not spell world

22 backward correctly, although she named four of the letters in correct backwards order

(*id.*; *see also* Tr. 505). In addition, plaintiff's score was 58 seconds on the A section of the Trails test, indicating a "severe impairment," although plaintiff's Trails A test was discontinued after 58 seconds because plaintiff "complained of numbness and pain in her writing hand that appeared to interfere with her performance" (*see* Tr. 511).

This report includes the results of the Wechsler Abbreviated Scale of Intelligence (WASI), with full scale IQ score of 52; verbal IQ of 55; and performance IQ of 56 (Tr. 506; *see also* Tr. 510-11). Ms. Sjostrom observed that during plaintiff's "WASI administration, [plaintiff] appeared to have difficulties sustaining concentration on the tasks" (*see* Tr. 511). Ms. Sjostrom opined that plaintiff's "current depressed mood is believed to have interfered with her performance" (*see* Tr. 511-12). Ms. Sjostrom also indicated her opinion that "it is unlikely that even with appropriate attention and concentration she would score higher than in the Extremely Low range" (Tr. 512).

The findings and opinions of Ms. Sjostrom were affirmed and adopted by Dr. Dalley (*see* Tr. 504, 514). Dr. Dalley indicated that he adopted as his own, "the accuracy, objectivity, validity, findings and conclusions of the above report and accept accountability for the contents" (*see* Tr. 514). Ms. Sjostrom and Dr. Dalley indicated their awareness of the fact that plaintiff was not receiving mental health services at that time; however, they also opined that plaintiff was not likely to have her ability to work for pay in a regular and predictable manner restored or substantially improved with mental health intervention (Tr. 504). They likewise indicated their awareness of the facts that plaintiff was "not currently taking any psychotropic medications or receiving any

1  counseling services," and that there was no "history of any psychiatric hospitalizations or
2  mental health services" (Tr. 509).
3      Ms. Sjostrom and Dr. Dalley opined that plaintiff was markedly depressed and that
4  she suffered from "major depressive disorder, recurrent, severe, without psychotic
5  features," as well as "mild mental retardation (provisional)" (Tr. 502). Ms. Sjostrom and
6  Dr. Dalley also opined that plaintiff suffered from limitations that were markedly severe,
7  both in cognitive and social factors (Tr. 503). For example, they opined that plaintiff
8  suffered from markedly severe limitations in her cognitive ability to understand,
9  remember and follow complex (more than two-step) instructions; learn new tasks and
10 exercise judgment and make decisions (*id.*). Ms. Sjostrom and Dr. Dalley also opined that
11 plaintiff suffered from markedly severe limitations in her social ability to relate
12 appropriately to co-workers and supervisors; and to respond appropriately to and tolerate
13 the pressures and expectations of a normal work setting (*id.*). Summary impressions
14 include that plaintiff's "intellectual deficits are likely to significantly interfere with [her]
15 ability to succeed in a work environment that is not sheltered and does not provide
16 adequate guidance and supervision" (*see* Tr. 513).
17     The ALJ failed to credit the opinions by Ms. Sjostrom and Dr. Dalley (*see* Tr. 18).
18 The ALJ failed to discuss any of the objective test results and failed to indicate any
19 awareness of the fact that the "evaluation from Behavioral Assessment & Counseling"
20 included opinions from a licensed psychologist that plaintiff suffered from specific
21 functional limitations on her ability to work (*see* Tr. 503, 504, 514). In addition, the
22 reasons given by the ALJ for her failure to discuss or adopt the report and opinions by

Ms. Sjostrom and Dr. Dalley are not legally adequate and the ALJ's decision is not supported by substantial evidence in the records as a whole (*see* Tr. 18). *See Magallanes*, *supra*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'").

The ALJ included the following as justification for failing to discuss the objective evidence, assessments and opinions in the report by Ms. Sjostrom and Dr. Dalley:

> However, at the time of the assessment, the claimant was not currently taking any psychotropic medications or receiving counseling services. Moreover, the claimant had no history of any psychiatric hospitalizations or mental health services reported.

(Tr. 18).

The ALJ fails to explain why the facts that plaintiff was not receiving medication or counseling; and that there was no history of psychiatric hospitalizations or mental health services demonstrates that the treatment report by Ms. Sjostrom and Dr. Dalley is not significant and probative. The ALJ appears to conclude that if a person is not taking medication or receiving treatment, the person therefore cannot have functional impairments on her ability to work. The ALJ, however, has failed to explain the basis for this conclusion. The Court also notes that these facts that the ALJ relies on to support her failure to credit the opinions of Ms. Sjostrom and Dr. Dalley are within the report by Ms. Sjostrom and Dr. Dalley, as already mentioned (*see* Tr. 504, 509). They were aware of these factors, yet they nevertheless opined that plaintiff suffered from multiple markedly severe limitations on her ability to work, and opined that plaintiff's "intellectual deficits

1 are likely to significantly interfere with [her] ability to succeed in a work environment

2 that is not sheltered and does not provide adequate guidance and supervision" (*see* Tr.

3 503, 513). By stating the same facts as were known by the doctor, yet coming to a

4 different conclusion, the ALJ appears to rely on her own medical expertise. However, the

5 ALJ must explain why her own interpretations, rather than those of the doctor, are

6 correct. *See Reddick, supra*, 157 F.3d at 725 (*citing Embrey*, *supra*, 849 F.2d at 421-22).

7   In addition, as mentioned already by the Court, Ms. Sjostrom and Dr. Dalley

8 indicated their awareness of the fact that plaintiff was not receiving mental health

9 services at that time; however, they also opined that plaintiff was not likely to have her

10 ability to work for pay in a regular and predictable manner restored or substantially

11 improved with mental health intervention (*see* Tr. 504).

12   Based on the stated reasons and the relevant record, the Court concludes that the

13 ALJ failed to explain adequately why her own interpretations, rather than those of the

14 doctor, are correct. *See Reddick*, *supra,* 157 F.3d at 725 (*citing Embrey*, *supra*, 849 F.2d

15 at 421-22). The Court also concludes that the ALJ failed to provide a written decision

16 regarding plaintiff's mental impairments that is based on substantial evidence in the

17 records as a whole. *See Magallanes*, *supra*, 881 F.2d at 750 ("Substantial evidence" is

18 more than a scintilla, less than a preponderance, and is such "'relevant evidence as a

19 reasonable mind might accept as adequate to support a conclusion'").

20   The Court is aware that in some circumstance, depending on the context and the

21 given record, a lack of adherence with prescribed treatment may call into question a

22 Social Security claimant's credibility regarding the severity of the alleged symptoms and

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 11

impairments and may otherwise support a finding that the claimant is not disabled. *See* 20 C.F.R. § 404.1530; *see also* SSR 96-7 1996 SSR LEXIS 4, at *21-*22 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . . and there are no good reasons for this failure"); *but see Nichols v. Califano*, 556 F.2d 931, 932 (9th Cir. 1977). However, a good reason can provide a valid excuse for not following prescribed treatment, such as that the person does not have the ability, due to mental impairments, to comply with prescribed treatment. *See* 20 C.F.R. § 404.1530; SSR 96-7 1996 SSR LEXIS 4, at *21-*22; *Nichols, supra*, 556 F.2d at 933.

When a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that she needs her medication, or she may not even realize that her "condition reflects a potentially serious mental illness." *Van Nguyen, supra*, 100 F.3d at 1465. "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (*quoting* with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

When a person suffers from a mental illness and the mentally ill person does not have the requisite insight into her condition to seek treatment, this fact actually can indicate a greater severity of mental incapacity. *See Van Nguyen, supra*, 100 F.3d at 1465; *see also Blankenship, supra*, 874 F.2d at 1124. In addition, according to Social Security Ruling, ("SSR"), SSR 96-7, "the adjudicator must not draw any inferences about

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 12

an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7, 1996 SSR LEXIS 4, at *21-*22; *see also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it") (citations, ellipses and brackets omitted).

The ALJ did not discuss any factors in the record that may have explained plaintiff's failure to seek out mental health treatment before relying on plaintiff's lack of mental health treatment in order to support her failure to discuss objective findings and medical opinions significant and probative to the ultimate issue at hand: plaintiff's limitations on her ability to conduct work based activities in a regular work environment. The ALJ did not discuss any evidence regarding plaintiff being prescribed mental health treatment, and did not mention who may have prescribed any such mental health treatment. *See Bray*, *supra*, 554 F.3d at 1226-27. In addition, perhaps more importantly, as stated by the Ninth Circuit, "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *See Van Nguyen, supra*, 100 F.3d at 1465 (*quoting with approval*, *Blankenship*, *supra*, 874 F.2d at 1124).

Defendant urges the Court to make inferences regarding the reasons for which the ALJ failed to credit fully the examiners' opinions (*see* Response, ECF No. 15, p. 11), however, according to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *See Bray*, *supra*, 554 F.3d at 1226-27 (*citing Chenery Corp.*, *supra*, 332 U.S. at 196 (other citation omitted)).

For the stated reasons, and based on the relevant record, the Court concludes that the ALJ failed to evaluate the medical evidence properly. This is not harmless error, as it affects the ultimate disability decision. Therefore, this matter should be reversed and remanded to the Administration for further proceedings.

2. <u>The ALJ erred in her review of the lay evidence offered by other medical source, Nurse Practitioner Teresa Colley ("Nurse Colley")</u>.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," *see* 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," *see* 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d)(1). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); SSR 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may disregard opinion evidence

provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

However, "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources. *See* 2006 SSR LEXIS 5 at *3-*4 (internal citations omitted). Nevertheless, evidence from other sources, that is, lay evidence, can demonstrate "the severity of the individual's impairments(s) and how it affects the individual's ability to function." *Id.* at *4. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.* In addition, "depending on the particular facts in a case, and after applying the factors for weighing

opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at *12-*13.

The ALJ included the following discussion in her written decision regarding the lay opinions of Nurse Colley:

> While Nurse Colley indicated that claimant's overall work level was severely limited and rated the claimant's interference with the ability to perform one or more basic work-related activities as marked, she is not an acceptable medical source and the evidence can only be used to show the severity of the claimant's impairments and how it affects her ability to work.

(Tr. 17).

However, what lay opinion evidence can be used to show, that is, "the severity of the claimant's impairments and how it affects her ability to work," is exactly what Nurse Colley's evidence demonstrates (*see id.*). The ALJ simply states the standard by which lay evidence should be evaluated, and by doing so has not provided a germane reason to fail to credit such evidence fully. *See* 2006 SSR LEXIS 5 at *4 (internal citations omitted). As even the ALJ's discussion reflects, Nurse Colley's opinion is relevant to "the severity of the claimant's impairments and how it affects her ability to work" (*see id.*; Tr. 17). Therefore, the evidence is significant and probative and must be discussed and accepted, or must be rejected for a germane reason.

By providing a statement of the relevant rule and standard as the reason to justify her failure to credit lay opinion evidence, when this standard supports the relevance of

this lay opinion evidence, the ALJ has demonstrated only a lack of compliance with the Administrations' own rules. *See* 2006 SSR LEXIS 5 at *4, *8.

Therefore, based on the said reasons and the relevant record, the Court concludes that the ALJ erred in her review of the lay opinion evidence offered by Nurse Colley. As the Court already has determined that this matter should be reversed and remanded for further consideration, *see supra*, section 1, Nurse Colley's opinion evidence should be evaluated anew following remand of this matter.

The Court has not made explicit findings about which steps in the sequential disability evaluation process were affected by the ALJ's errors. However, the Court has concluded that the ALJ erred in her review of the medical evidence with respect to both plaintiff's mental and physical impairments, *see supra*, sections 1 and 2. Although plaintiff contended that the ALJ erred in her step two determination that plaintiff's rheumatoid arthritis was a non-severe impairment, the ALJ actually found that plaintiff's arthritis was a severe impairment at step two. Tr. 14.

Based on the relevant record; the reasons stated; and arguments of plaintiff not discussed herein, the Court concludes that the record should be evaluated anew in its entirety and the entire sequential disability evaluation process should be completed anew.

## CONCLUSION

Based on the stated reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on November 30, 2012, as noted in the caption.

Dated this 9th day of November, 2012.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 18